UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEMERIS TOLBERT,                                    **REPORT AND**
                                                    **RECOMMENDATION**
                              Plaintiff,
                                                    19-cv-1691(JLS)(JJM)
v.


ANN MARIE SULLIVAN, et al.,

                              Defendants.
_____

        Before the court is defendants' motion [159][1] seeking to enforce an oral

settlement agreement, which has been referred to me by District Judge John L. Sinatra, Jr. for

initial consideration [36].  For the following reasons, I recommend that the motion be denied.[2]


                              **BACKGROUND**

        Pursuant to 42 U.S.C. §1983, *pro se* plaintiff Demeris Tolbert seeks relief in this

action for civil rights violations which he allegedly suffered while incarcerated. Amended

Complaint [30]. On May 23, 2023, New York State Assistant Attorney General ("AAG") Ryan

---

[1]      Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF
pagination.

[2]      "Although the governing statute does not specifically list a 'motion to enforce a settlement' as a
type of motion that may not be decided by a magistrate judge without the parties' consent . . . the weight
of authority in this Circuit is that such a motion should be characterized as either 'dispositive' . . . or the
'functional equivalent' of a dispositive motion." Dannhauser v. TSG Reporting, Inc., 2019 WL 2950142,
*7 (S.D.N.Y. 2019).

L. Belka recorded a telephonic settlement discussion with Tolbert which, he claims, resulted in an agreement to settle the action. Belka Declaration [156], ¶¶4-6.[3]

During that teleconference, AAG Belka told Tolbert: "I just want to be clear. We're settling this case, today, on the phone, $5,000, and then it's just a paperwork issue after that. I send you the paperwork, $5,000, you send that paperwork back to me, I file that with the court, that gets the ball rolling so that the comptroller can process the payment . . . . I'm going to notify the court today, ok, that the case is settled . . . then you and I work on the paperwork, it will be in a return-stamped envelope, all you got to do is sign, put it in the envelope, come back to me, I file it with the court, they so order the settlement, and then we get the ball rolling with the $5,000 payment. And you're good with all that". Defendants' Reply Letter Brief [170] at 1-2, n. 2. Tolbert replied: "Yeah, yes, yes, we good . . . . Send me the papers I'll sign it". Id. at 2, n. 2.

That same day, AAG Belka notified the court that the action had settled, and requested 60 days "to file an executed Stipulation of Settlement and Discontinuance". Notice of Settlement [153]. Judge Sinatra issued a Text Order [155] directing Tolbert to either notify the court of the dismissal or file a status report concerning the settlement by July 21, 2023. Shortly thereafter, AAG Belka mailed Tobert settlement documentation for his signature. Belka Declaration [156], ¶¶9-10.

On July 10, 2023 he telephoned Tolbert to inquire as to the status of the settlement documentation, and again recorded that conversation. Id., ¶¶13-14. During that teleconference, he told Tolbert that he also needed to sign an Affidavit stating that he was not going to be a Medicare beneficiary. That had not been discussed during the previous

---

[3]    AAG Belka has furnished the court with a thumb drive recording of his May 23 and July 10, 2023 teleconferences with Tolbert [171], and I have listened to both recordings.

teleconference. Tolbert told AAG Belka that he would write him a letter, which he did on July 17, 2023. [156] at 8-9.

Tolbert's letter stated that he "would like to renegotiate his recent settlement agreement with the defendants", explaining that "[d]ue to plaintiff's recent stroke and increase in daily medications, plaintiff was unable to properly represent himself during his first settlement agreement. In addition the first Assist[ant] Att[orne]y General I spoke to stated something totally different from Ryan Balka [*sic*] . . . . However I'd like to thank Mr. Ryan Balka for allowing plaintiff to enter into a settlement agreement to begin with but again due to plaintiff['s] recent stroke (brain damage) plaintiff was unable to properly represent himself, more less, fully understand the entire nature of the settlement agreement. And for all the reasons stated above plaintiff prays to (renegotiate) settlement agreement with a mediator and/or an att[orne]y". Id.

By Text Order dated July 31, 2023 [157], I directed the parties to address the issue of whether a recorded telephone conversation which was not made on the record in open court can create an enforceable settlement agreement. On August 8, 2023 defendants submitted a Letter Brief in response to my Text Order and moved to enforce the oral settlement agreement [159]. I then appointed attorney Anne Modica Eich as limited scope *pro bono* counsel to assist Tolbert in responding to the motion. August 9, 2023 Text Order [160]. On October 2, 2023 she filed a Letter Brief in opposition to the motion [168], and on October 17, 2023 defendants submitted a Reply Letter Brief [170].

## DISCUSSION

"The Second Circuit has not addressed the question of whether a district court should apply federal or state law to decide a motion to enforce a settlement." Peters v. Huttel,

2022 WL 1126751, *2 (S.D.N.Y. 2022). New York Civil Practice Law and Rules ("CPLR") §2104 provides that "[a]n agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered". Tolbert argues that defendants' motion should be denied because "the facts of this case fail to satisfy the requirements of CPLR §2104". Tolbert's Response [168] at 4.

I disagree. While some courts have held that CPLR §2104 must be satisfied in order to enforce an agreement to settle a federal question case,[4] "the majority of district courts have applied only federal common law in federal question cases when a motion is filed to enforce an oral settlement agreement". Oparah v. New York City Department of Education, 2015 WL 4240733, *5 (S.D.N.Y. 2015). *See, e.g.,* Patel v. Long Island University, 2023 WL 6211769, *8 (E.D.N.Y. 2023) (§2104 is procedural and should not be applied in federal question cases); Jackson v. Heidelberg L.L.C., 2006 WL 8446399, *5 n. 2 (W.D.N.Y. 2006) ("this Court does not subscribe to the view that §2104 should automatically be applied to cases pending in federal court"); Figueroa v. City of New York, 2011 WL 309061, *5 (S.D.N.Y. 2011) (§2104 "does not apply" in a federal question case). Therefore, I conclude that compliance with CPLR §2104 is not necessary.

While disagreeing as to the applicability of §2104, the parties agree that in determining this motion I should be guided by the reasoning of Winston v. Mediafare Entertainment Corp., 777 F.2d 78 (2d Cir. 1985). *See* defendants' Motion and Reply [159, 170]; Tolbert's Response [168]. Winston holds that "parties are free to enter into a binding contract

---

[4]    *See, e.g.,* Silas v. City of New York, 536 F. Supp. 2d 353, 357 (S.D.N.Y. 2008) ("a settlement agreement must both satisfy the common-law test for the enforceability of oral agreements and meet the New York statutory requirements for agreements related to litigation").

without memorializing their agreement in a fully executed document. This freedom to contract orally remains even if the parties contemplate a writing to evidence their agreement". 777 F.2d at 80.

        <u>Winston</u> lists "several factors that help determine whether the parties intended to be bound in the absence of a document executed by both sides. The court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." Each factor "must be considered in light of the entire context of the case, always bearing in mind that the parties' intent ultimately controls". <u>Lindner v. American Express Corp.</u>, 2007 WL 1623119, *4 (S.D.N.Y. 2007).

## 1.    Has There Been an Express Reservation of the Right Not to be Bound in the Absence of a Writing?

        "The first factor . . . is the most important." <u>Adjustrite Systems, Inc. v. GAB Business Services, Inc.</u>, 145 F.3d 543, 549 (2d Cir. 1998). "[I]f either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract." <u>Winston</u>, 777 F.2d at 80. "This rule holds even if the parties have orally agreed upon all the terms of the proposed contract." <u>R.G. Group, Inc. v. Horn & Hardart Co.</u>, 751 F.2d 69, 74 (2d Cir. 1984).

        "The parties' intent may be discerned from [their] words and deeds, which constitute objective signs in a given set of circumstances." <u>Lindner</u>, 2007 WL 1623119, *3. Although AAG Belka told Tolbert on May 23 that "[w]e're settling this case, today", he *also* told him that signing and returning the paperwork "gets the ball rolling so that the comptroller can

process the payment". To "get the ball rolling" means "to *begin* an activity or process".

Merriam-Webster Online Dictionary (www.merriam-webster.com) (emphasis added). When I

asked AAG Belka whether Tolbert would be paid if he does not sign and return the paperwork

(including the Medicare Affidavit), he responded that "the paperwork simply allows the

Comptroller to release his settlement proceeds. If he wants those monies to remain unclaimed,

he can do so". [172] at 1.

       Clearly, then, defendants conditioned their obligation to pay Tolbert the

settlement amount on his execution of the settlement paperwork, including the Medicare

Affidavit (which had not been discussed on May 23). Were that not so, their Notice of

Settlement [153] would have asked this court to dismiss the case immediately, rather than

requesting an additional 60 days. *See* Dunkin' Donuts Franchised Restaurants, LLC v. 1700

Church Ave. Corp., 2009 WL 10695151, *3 (E.D.N.Y.), adopted, 2009 WL 10695189 (E.D.N.Y.

2009) ("[h]ad the parties intended that the mere recital . . . of the terms of the agreement would

immediately bind [them, they] could have requested that the Court discontinue the action with

leave to reopen if the settlement was not consummated").


**2.      Has There Been Partial Performance?**

       Defendants argue that "there was performance . . . because they stopped litigating

this case and pursuing discovery from Plaintiff in reliance on his agreement to settle, and then

mailed him settlement paperwork to sign. At worst, Plaintiff's repudiation of the parties' prior

agreement at that point renders this factor neutral". October 17, 2023 Reply Letter Brief [170] at

2.

However, their mailing settlement paperwork to Tolbert was at best "partial"

partial performance, because that paperwork included a Medicare Affidavit which had not been

discussed when the alleged oral agreement was reached. "[T]he actual drafting of a written

instrument will frequently reveal points of . . . omission which must be worked out prior to

execution. Details that are unnoticed or passed by in oral discussion will be pinned down when

the understanding is reduced to writing . . . . That these unnoticed or passed by points of

disagreement may in the long view be fairly characterized as minor or technical does not mean

that a binding contract was formed prior to the time that they were finally worked out." Winston,

777 F.2d at 82.


3.      **Have All Terms been Agreed Upon?**

"The third prong of the Winston framework asks whether there was literally

nothing left to negotiate or settle, so that all that remained to be done was to sign what had

already been fully agreed to." In re Lehman Bros. Holdings Inc., 739 F. App'x 55, 57 (2d Cir.

2018). Defendants argue that "[t]here [was] a single material term, the settlement amount, that is

exchanged for dismissal of an individual lawsuit" (August 8, 2023 Letter Brief [159] at 3), and

Tolbert agrees that "the settlement amount was agreed to in exchange for dismissal of the

lawsuit". October 2, 2023 Letter Brief [168] at 4.[5]

---

[5]     The Medicare Affidavit was not a condition of the settlement, since it was not mentioned at the
time of the alleged agreement. "If defendants considered plaintiff's Medicare status to be critical in
deciding whether to settle, they should have ascertained that status before agreeing that the settlement was
effective". Cole-Hoover v. New York State Department of Corrections and Community Supervision, 594
F. App'x 23, 24 (2d Cir. 2015).

**4.      Is This Type of Agreement Normally Committed to Writing?**

Defendants admit that "this is the kind of agreement that is typically committed to a boiler-plate writing", and therefore that "the fourth Winston factor arguably does not favor the enforcement of the parties' settlement agreement". August 8, 2023 Letter Brief [159] at 4.

"[T]he proponent of a contract . . . has the burden of proving the existence of a contract by a preponderance of the evidence." Lindner, 2007 WL 1623119, *4. Having considered the Winston factors both individually and cumulatively, I conclude that defendants have not met that burden. In light of that conclusion, I need not address the arguments which Tolbert raises concerning his physical and mental health in his October 2, 2023 Letter Brief [168].

**CONCLUSION**

For these reasons, I recommend that the defendants' motion to enforce the oral settlement agreement [159] be denied. Unless otherwise ordered by District Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by December 22, 2023.  Any requests for extension of this deadline must be made to District Judge Sinatra.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

-8-

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal</u>
<u>Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

    The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local
Rules of Civil Procedure, written objections shall "specifically identify the portions of the
proposed findings and recommendations to which objection is made and the basis for each
objection . . . supported by legal authority", and must include "a written statement either
certifying that the objections do not raise new legal/factual arguments, or identifying the new
arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply
with these provisions may result in the district judge's refusal to consider the objections.

Dated: December 8, 2023

             <u>/s/Jeremiah J. McCarthy</u>
             JEREMIAH J. MCCARTHY
             United States Magistrate Judge